**FILED**

**May 17, 2021**

KAREN MITCHELL
CLERK, U.S. DISTRICT
COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

EPITACIO CABRERA-CASTILLO,
    Petitioner,

v.          Case No. 4:16-cr-00122-O

UNITED STATES OF AMERICA,
    Respondent.

## PETITION FOR REDUCTION IN SENTENCE OR COMPASSIONATE RELEASE, AND MOTION FOR APPOINTMENT OF COUNSEL

Petitioner, Epitacio Cabrera-Castillo ("Petitioner"), pro se, hereby petitions this Honorable Court to grant reduction in his term of confinement, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). He coterminously moves this Court to enter a standing order appointing counsel.

—1—

## I. Petitioner has established extraordinary and compelling reasons to warrant a sentence reduction.

Reason One: Health-Related Circumstances

Petitioner is 59 years old. He suffers from hypertension, severe gastroesophageal reflux disease, asthma, and obesity. He also has a history of hospitalizations for pneumonia. It has also been noted that one of his lungs (the left) functions with greater efficiency than the other. Consequentially, mild to moderate physically activity, such as walking to the prison dining hall for meals, greatly exhaust him. Further, suffers from constant pain from a poorly-repaired hernia. It has been noted that the type

—2—

and brand of mesh that was used to repair the hernia is defective. (There has been a class action law suit brought against the manufacturer of this specific brand of mesh.) Unfortunately, it is highly unlikely that Petitioner will receive the surgery he needs to repair the hernia / replace the mesh while he is in the custody of the Federal Bureau of Prisons ("BOP").

Additionally, some time in November of 2021, Petitioner was infected with COVID-19. Although he was never formally diagnosed with the virus, he asserts that he was nonetheless infected. He also asserts that he complained daily to the medical staff about his various symptoms of the virus, on numerous occasions over a two week period. His symptoms

—3—

varied over a two week period but include: headache, fever, chills, constipation, loss of taste and smell, severe sciatica, and neuropathy in the feet. During this time, he also developed an incessant ringing in both ears—or tinnitus.

Although he was never tested for COVID-19 during the period which he was infected, he asserts that if his blood serum were tested today, the Court would have evidence of this infection. Although Petitioner recovered from COVID-19 without hospitalization or other medical intervention, he asserts that he has yet to fully recover. He still suffers from the aforementioned tinnitus——which is of course non-life threatening, however is a cause of great frustration

and anxiety to him. Further, his breathing has been far more labored than at any point before his infection (other than during his bouts of pneumonia). As a result, he often feels exhausted——too exhausted to even walk to the dining hall for meals. There are times where his breathing becomes so labored that it feels as if he is suffocating and his vision becomes as if he were gazing through pin-holes.

Petitioner asserts that his lingering symptoms are not psychosomatic, and that they are the symptoms of long haul COVID-19. He regularly files sick-call request to the Health Services Department at FCI Gilmer, where he is currently incarcerated, but he has yet to receive any reasonable

— 5 —

response, much less effective medical treatment. The only actual response he has received was to purchase OTC medications from the prison commissary to treat his ailments.

In addition to his lingering COVID-19 symptoms, Petitioner also suffers from a painful swelling of the right testicle. This issue has been reported to the BOP's medical personnel; again, the BOP's Heath Services Department has yet to provide him with effective treatment. Several times a year, Petitioner's testicle grows to the size of a orange. It becomes difficult for him to sit in a chair due to the intense pain. The swelling and pain subsides after a week or two, but returns within a couple of months. Petitioner's

—6—

urine was analyzed for the indication of testicular cancer — which returned a negative result — about two years ago. He was also provided medication for this issue —— which proved ineffective —— about two years ago. He took the medication for several weeks as prescribed, until it was discontinued. Again, he has received no treatment for this painful ailment since.

Since the outbreak of the COVID-19 pandemic, numerous courts within the Second, Fourth, Sixth, Seventh, Ninth, and Tenth Circuits have determined that a petitioner's pre-existing health conditions —— especially respiratory conditions —— in combination with increased risks of COVID-19 in prison constitutes "extraordinary and compelling reasons" warranting

—7—

relief. See, e.g., United States v. Norris, No. 3:17-cr-106 (SRU), 3:18-cr-243 (SRU), 2020 U.S. Dist. LEXIS 70219 (D. Conn. Apr. 16, 2020) ("Norris suffers from asthma and uses an Albuterol inhaler to treat his symptoms. Health officials have recognized that individuals with chronic respiratory disease are deemed at greater risk of COVID-19. Due to his incarceration, [petitioner] is unable to properly safeguard against infection." (internal citations omitted)); United States v. Smith, No. 12 CR. 133 (JFK), 2020 U.S. Dist. LEXIS 64371, 2020 WL 1849748, at *1, *4 (S.D.N.Y. Apr. 13, 2020) ("[Petitioner] is 62 years old and suffers from multiple physical ailments. He has been treated for, among other things, asthma, high cholesterol, blood clots, a thyroid condition, and suspected multiple

myeloma.... [Petitioner's] age
and medical conditions—such as
his asthma place him at a
higher risk for developing
serious complications should he
be exposed to COVID-19 while
at MDC or a halfway house,
and would substantially
diminish his ability to
provide self-care within those
environments." (citing U.S.S.G.
§ 1B1.13 cmt. n.1(A)(ii))); and
United States v. McCarthy, No.
3:17-cr-0230 (JCH), 2020 U.S.
Dist. LEXIS 61759, 2020 WL
1698732, *5 (D. Conn. Apr. 8,
2020) (granting relief to a 65-
year-old inmate with chronic
obstructive pulmonary disease
at MDC Brooklyn).

　　　Although it has been
noted by numerous district
courts, throughout several
circuits, that co-morbidities
(such as Petitioner's) and

— 9 —

the dangers or increased
risk of contracting COVID-19
in an institutional
environment can constitute
extraordinary and compelling
reasons warranting compassionate
release (see, e.g., United States
v. Muniz, 4:09-CR-199-I, 2020
WL 1540325, at *1 (S.D. Tex.
Mar. 30, 2020) (observing that
the petitioner "has been
diagnosed with serious medical
conditions that... make him
particularly vulnerable to
severe illness from COVID-19,"
in determing that such
circumstances constitute
extraordinary and compelling
reasons warranting reduction
under § 3582(c)(1)(A))), he
also asserts that his various
medical conditions inhibit his
ability to render self-care
in a custodial setting. See
U.S.S.G § 1B1.13 ("reason 1").

-10-

Reason Two:  Impact of BOP's Action Plan on Conditions of Confinement

The restrictions and conditions imposed on Petitioner by the implementation of the BOP's mult-phase Action Plan has rendered his confinement significantly harsher than could have been anticipated by the Court at the time of sentencing. This is relevant, as courts consider the harshness of a sentence when determining whether compassionate release is appropriate. See <u>United States v. Spano</u>, 476 F.3d 476, 479 (7th Cir. 2007) ("In effect Schullo is arguing that the severity of a prison sentence has two dimension: its lenght, and the harshness of the conditions, and the harsher the conditions the shorter

— 11 —

the sentence should be. There is enough merit to the argument to allow a sentencing judge to take it into account."); United States v. Noriega, 46 F. Supp. 2d 1378, 1379 (S.D. Fla. Mar. 5, 1999) (Judge reduces old-law sentence from forty to thirty years in part because of harsh nature of incarceration. "There is little question that [segregated confinement] is a more difficult ("harder" type of confinement than general population. For some, the consequences of such deprivation can be serious.").

Petitioner's incarceration has included periods of confinement exceeding 60 hours straight, in a 60 square foot cell (quarters roughly the size of the typical residential bathroom), only leaving the cell for 15 minute intervals, every few days in

— 12 —

order to bathe. He has also gone without requested and necessary medical treatment during the implementation of the BOP's response plan, as the BOP's medical personnel appears to routinely ignore his sick-call requests. Petitioner notes: the BOP's response to his health needs was not very adequate before the COVID-19 pandemic infiltrated the federal prison system.

Due to the ongoing pandemic and the BOP's response plan, Petitioner's institutions of confinement have been on some sort of modified operations schedule for nearly a year. Consequently, again, he has spent much of this time in isolation. During this period, he has only been able to engage in self-directed rehabilitative efforts. He now

—13—

spends much of his day trying to increase his proficiency in the English language by reading and, also, listening to English-language radio broadcasts. He also engages in self-study that covers a broad range of topics (from religion to agriculture), by reading self-help books and various publications.

During the last year, Petitioner has had limited ability to communicate with his beloved wife of nearly 40 years. His wife has had her own health struggles during the COVID-19 pandemic, and he has not been able to console or comfort her during this time due to the BOP's COVID-19 response plan. Unfortunately, considering the fact that a majority of the

BOP's staff is refusing the available vaccine (it has been estimated that approximately 55% has affirmatively refused the vaccine), there appears to be no end in sight for the BOP's rickety COVID-19 Action Plan.

Thus, because of the harsh nature of confinement that Petitioner is currently subject to, including but not limited to inadequate health care, lack of rehabilitative programming, and inability to communicate with his wife and other loved ones, his sentence has been rendered substantively unreasonable. He contends that his sentence currently serves no purpose but to be strictly punitive.

Section 3553 provides that a goal of sentencing should be "[t]o provide the defendant with

needed educational or vocational
training, medical care, or
other correctional treatment in
the most effective manner."
Given Petitioner's various needs,
the most effective way for
the Court to accomplish these
goals is to grant compassionate
release. Phrased differently,
Petitioner's current sentence
violates Section 3553(a)'s
"parsimony provision," as it
fails to accomplish many of
the relevant aims of
sentencing while simultaneously
overshooting the others. See
18 U.S.C. § 3553(a)(1)-(7).

Reason Three: Family
Circumstances not Considered
by Court at Time of
Sentencing

Although, Petitioner
Concedes, caring for a sick and/

—16—

or aging parent is not a
qualifying "family circumstance"
under U.S.S.G. § 1B1.13(1)(A)
(see, e.g., United States v.
Hudec, No. 4:91-1-1, 2020 U.S.
Dist. LEXIS 151658, *14 (S.D.
Tex. Aug. 19, 2020)), he
argues that the Court has the
discretion to consider whether
the following reason qualifies
as extraordinary and compelling.
    In the alternative,
Petitioner request relief, again,
pursuant to § 3582(c)(1)(A)(i),
claiming any other extraordinary
and compelling reason to support
his request for reduction in
sentence. Petitioner states for
the record, that his elderly
mother resides in a rural part
of Mexico with no cellular
phone service, at little access
to "landline" phone service.
She lives alone because her
husband, Petitioner's father, died

two years ago. Consequentially, Petitioner is the only potential caregiver available for his mother. His mother has difficulties accomplishing basic tasks, such as picking up her essential medications from the distant pharmacy, finding reliable transportation to medical appointments, and even shopping for groceries.

It is important to note, Petitioner's mother suffers from insulin-dependent diabetes, various coronary-related diseases, and the onset of dementia. The COVID-19 pandemic has only exacerbated this situation and increased her need for a regular caregiver in the home.

Additionally, Petitioner's wife of 43 years, who currently resides in Fort Worth, Texas, also suffers from insulin-dependent diabetes.

—18—

She also suffers from coronary and circulatory issues, as many diabetics do. Her diabetes and circulatory issues have lead to the amputation of several toes and parts of her feet. Her amputations have only recenty occurred and she now has issues providing self-care in the home.

Although Petitioner and his wife share two daughters, one an adult and one a minor, the oldest of their daughters has now been tasked with being the legal guardian of the youngest. This is due to Petitioner's incarceration and his wife's recent disability. Their oldest daughter is incapable of caring for her mother; thus, Petitioner is the only caregiver potentially

available.

Further, Petitioner's wife wishes to return to her native country of Mexico once Petitioner is released. They have a home that is waiting for their return. Petitioner is sincerely committed to caring for his wife and mother in their home, while abstaining from future criminal activities, after release is granted.

Petitioner contends, that he is the only person available (or potentially available) to care for his wife and mother; this circumstance does qualify as an extraordinary and compelling reason warranting reduction in sentence or compassionate release under § 3582(c)(1)(A)(i).

## II. Exhaustion of Administrative Remedies Under BOP Program Statement 5050.50

On or about March 30, 2021, Petition filed a written request for compassionate release to Warden R.M. Wolfe, of FCI Gilmer. The request was ultimately denied. Because Petitioner presented his request to the warden more than 30 days prior to the filing of the instant petition, he has met the minimum administrative prerequisite under § 3582(c)(1)(A) for filing this petition. Thus, the only tasks for the Court to complete are (1) whether "extraordinary and compelling reasons" warrant reduction of Petitioner's sentence and (2) whether the § 3553(a) factors weigh in favor of such a reduction.

— 21 —

## III. Conclusion

Further, this Circuit has held that the district courts erred in binding themselves to the old 1B1.13 statement. In holding that the district court erred, the Fifth Circuit stated that "First, the text of § 1B1.13 says it only applies to 'motion[s] of the Director of the [BOP]' When Congress enacted the [First Step Act] in December of 2018, it gave prisoners authority to file their own motions for compassionate release; but it did not strip the BOP of authority to continue filing such motions on behalf of its inmates[.] So the policy statement continues to govern where it says it governs on the 'motion of the Director of the [BOP].' U.S.S.G § 1B1.13. But it does not govern here on the newly authorized motion of a prisoner." United

v. Shkambi, No. 20-40543,

"Second, the text of the commentary confirms the limited applicability of § 1B1.13. Application Note 4 of the commentary makes clear that a 'reduction under this policy statement may be granted only upon a motion by the Director of the Bureau of Prisons.' That note expressly limits the policy statement's applicability to motions filed by the BOP. Id (citation omitted).

"Third, the district court cannot rely on pieces of text in an otherwise inapplicable policy statement[.] It's true that application note 1 defines "extraordinary and compelling reasons" by articulating four categories of reasons that could warrant a sentence reduction. But this "text

— 23 —

may not be divorced from context." And the context of the policy statement shows that it applies only to motions filed by the BOP. "Just as the district court cannot rely on a money-laundering guideline in a murder case, it cannot rely on the BOP-specific policy statement when considering a non-BOP § 3582 motion." Again, Id (citation omitted).

Ultimately and in short, this Honorable Court is free to determine if Petitioner's grounds for relief under § 3582(c)(1)(A)(i), constitute extraordinary and compelling reasons warranting his early release from his term of confinement.

## IV. PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully prays for this Court to grant relief as follows: enter a standing order appointing counsel to assist in evidencing his extraordinary and compelling reasons for relief, reduce the sentence or provide immediate release to Immigration and Customs Enforcement (ICE) for deportation to Mexico, or provide any other relief in which Petitioner is entitled.

# V.  DECLARATION

I, Epitacio Cabrera-Castillo, do hereby declare under penalty that the aforementioned claims and statements are true and correct.

Executed at Glenville, West Virginia, on May 13, 2021

Respectfully submitted,

Epitacio Cabrera Castillo
Epitacio Cabrera-Castillo
Petitioner, pro se

-26-

**Submitted to Prison Staff on:**

4 / 1 /2020
(Month)  (Day)

____ / ____ / ____

Dear Warden R.M. Wolfe:
(Warden's Last Name)

Epitacio Cabrera-Castillo 12732-179

My name is _____ and my Register No. is _____. I am writing to respectfully request that I be considered for an early release from prison under the Compassionate Release Program, under 18 U.S.C. § 3582(c)(1), and that you treat this as a formal request for a reduction in sentence (RIS).

I believe I am a good candidate for Compassionate Release for the following reasons. I have been incarcerated since April 2016 . I am currently 58 -years-old.

Since I have been incarcerated, I have received the following medical treatment: X-ray on lungs, hernia, ~~diabetes and~~ high blood pressure, asthma

My current physical and mental health problems include: See above. One lung is underdeveloped / partially functioning

I take the following medications: blood pressure medications, asthma inhaler.

I believe I am (or a family member who needs my care is) at high risk of complications from COVID-19 because ~~+A~~ My mother is 80-years old and diabetic and has no one to care for her in Mexico.

Other information that makes me a good candidate for compassionate release includes: My sentence is excessive, I am not a risk to the US. because I will be deported.

When I am released from prison, I plan to live with My mother ~~at~~ In Mexico

Based on the information above, given my personal circumstances and the COVID-19 pandemic, I request early release under the Compassionate Release Program.

Thank you for your time and consideration.

Epitacio Cabrera Castillo 12732-179
(Full name)

Register Number: _____

Eric Travis Cabrera C-File
#12732-179
F.C.I- Gilmer
P. O. Box. 6000
Glenville, W. V. 26351



DEPUTY CLERK

U.S. DISTRICT COURT
OFFICE OF THE CLERK
501 W TENTH ST
Rm 310
FORT WORTH TX. 76102